Jenkins Law Firm
4020 N. 20th Street, Suite 100
Phoenix, AZ 85016
TELEPHONE 602.283.9868
FAX 602.412.3954
EMAIL LASHAWN.JENKINS@THEJENKINSLAWFIRM.COM

LaShawn D. Jenkins (#021840)

Attorneys for Walter Zahlmann and Twin Enterprises Consulting

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE:<br><br>BRADLEY DEAN DIEPHOLTZ and KAREN LOUISE DIEPHOLTZ,<br><br>Debtors. | Case No.: 2:10-bk-22054-CGC<br><br>Chapter 7 |
| WALTER ZAHLMANN AND TWIN ENTERPRISES CONSULTING,<br><br>Plaintiffs,<br><br>vs.<br><br>BRADLEY DEAN DIEPHOLTZ and KAREN LOUISE DIEPHOLTZ; B&K PROPERTIES, LLC,<br><br>Defendants. | Adversary No. 2:11-ap-00271-CGC<br><br>**RESPONSE TO MOTION TO DISMISS** |

Plaintiffs Walter Zahlmann and Twin Enterprises Consulting ("**Plaintiffs**"), hereby responds to the Motion To Dismiss (the "**Motion**") filed by the Defendants Bradley and Karen Diepholz ("**Debtors**" or "**Diepholzes**"). The Motion should be denied because: (i) Plaintiffs did not receive actual notice of the Debtors' bankruptcy filing until October 27, 2010, which was 105

days after the case was filed, and 9 days after the expiration of the time for filing complaints to determine the dischargeability of a debt, (ii) Plaintiffs' failure to receive notice of the bankruptcy was the result of Debtors and their attorneys' negligence, (iii) it is well established that pursuant to Fed.R.Bankr.P. ("**FRBP**") Rule 4007(b), there is no time limit to file a §523(a)(3)(B) dischargeability complaint, and (iv) equity justifies denial of the Motion, and allowing Plaintiffs Complaint to be heard on its merits.

This Motion is supported by: (a) the attached Memorandum of Points and Authorities, (b) the Declaration of Walter Zahlmann ("**Zahlmann Declaration**") attached hereto as **Exhibit A**, (c) the Declaration of Blake Mayes, Esq., plaintiffs' state court attorney ("**Mayes Declaration**") attached hereto as **Exhibit B**, and (d) the Declaration of David Telles, Esq., an attorney at MayesTelles, PLLC ("**Telles Declaration**") attached hereto as **Exhibit C**.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION.

For almost 6 years, Plaintiffs have attempted to collect on a Judgment obtained against a company owned by the Debtors. For over the last two years, Plaintiffs have attempted to collect the Judgment directly from the Diepholzes on alter ego/piercing corporate veil theories. In the process, the Diepholzes and/or their attorneys have repeatedly misrepresented and/or concealed facts concerning the assets of the Debtors, culminating with this latest ploy to conceal their bankruptcy filing from Plaintiffs. Plaintiff asserts that the Diepholzes have continuously hindered, delayed, and defrauded Plaintiffs in an effort to evade collection of the Judgment. *See* Zahlmann Declaration, ¶ 4. Plaintiffs believe that the Diepholzes state court attorney, James O. Ehinger and their current bankruptcy attorney purposely devised a scheme to conceal the Debtors' bankruptcy filing from Plaintiffs and Plaintiffs' attorney until after the deadline to file a complaint to

determine dischargeability had passed. *See* Zahlmann Declaration, ¶¶ 5, 8.

For starters, Plaintiffs' now believe the Diepholzes state court attorney had actual knowledge of their bankruptcy filing, but purposely did not disclose the fact that they had filed bankruptcy or the name of their bankruptcy attorney. The Debtors and their attorneys had a duty to not only inform Plaintiffs, but also the state court, that their clients had filed a bankruptcy. The State Court Action was clearly an action against the Debtors to collect a debt, yet the Debtors waited to file the Notice of Filing Bankruptcy in the action until November 9, 2010 (almost 4 months after the Petition Date. *See* Zahlmann Declaration, ¶ 8.

The following facts establish that: (i) Plaintiffs and their attorney in the State Court Action did not receive actual notice of the Debtors' bankruptcy until October 27, 2010, and (ii) Debtors and/or their attorneys have repeatedly misrepresented and/or concealed facts concerning the assets of the Debtors, and now, their bankruptcy filing, in order to hinder, delay, and defraud Plaintiffs from collecting their debt.

## II. **FACTUAL BACKGROUND.**

1. On October 1, 2003, Logo Lines Corporation ("**Logo Lines**"), a company owned and operated by the Debtors, commenced Case No CV2003-018736 in Maricopa County Superior Court, against Walter C. Zahlmann, Billie L. Zahlmann, and Twin Enterprises Consulting, alleging breach of contract, breach of fiduciary duties, tortious interference, and seeking injunctive relief.

2. On or about October 27, 2003, Plaintiff Walter Zahlmann filed an Answer and Counterclaim against Logo Lines.

3. Following adjudication on the merits, a judgment was entered against Logo Lines on the Counterclaim awarding Plaintiffs compensatory damages of $6,945.00, pre-judgment interest of $1,801.89, taxable costs of $436.00, attorneys' fees of $6,465.00 and interest on the judgment continuing to accrue at the legal rate of ten percent (10%) from March 14, 2006 until pain (the "**Judgment**"). A copy of the Judgment is attached to the Adversary Complaint which commenced this matter as **Exhibit 1**.

4. On or about October 9, 2008, Walter C. Zahlmann and his wife, Billie L. Zahlmann, commenced Case No. CV2008-053887 currently pending in the Maricopa County Superior Court (the "State Court Action"), to pierce the corporate veil and collect the debt from Debtors and B&K Properties, LLC ("**B&K**").

5. On August 21, 2010, counsel for Defendants Brad and Karen Diepholz in the State Court Action, James O. Ehinger, informed Mr. Mayes by e-mail as follows: "For your information, I have been told that Mr. & Mrs. Diepholz have filed bankruptcy, but I have not yet seen any paperwork to confirm that filing. I will try to find out the name of the attorney who's representing them in that proceeding and let you know." A true and correct copy of that e-mail is attached to the Mayes Declaration as Exhibit "1". *See* Mayes Declaration, ¶ 3.

6. On August 22, 2010 at 12:26 p.m., Mr. Mayes responded to that e-mail requesting that Mr. Ehinger keep him apprised of the purported bankruptcy filing. A true and correct copy of that e-mail is attached to the Mayes Declaration as Exhibit "1". *See* Mayes Declaration, ¶ 4.

7. On August 22, 2010 as well as on several subsequent occasions, Mr. Mayes also conducted research on PACER to determine whether Mr. and Mrs. Diepholz had filed bankruptcy. He was unable to locate any bankruptcy filing. *See* Mayes Declaration, ¶ 5.

8. As set forth below, Mr. Mayes was later informed on October 27, 2010 that he could not locate Mr. and Mrs. Diepholzes' bankruptcy filing because their bankruptcy attorney had misspelled their names in the filing. *See* Mayes Declaration, ¶ 6.

9. On August 22, 2010 at 12:26 p.m., Attorney Ehinger advised Mr. Mayes *via* e-mail that he would keep Mr. Mayes informed as to the purported bankruptcy filing. A true and correct copy of that e-mail is attached to the Mayes Declaration as Exhibit "1". *See* Mayes Declaration, ¶ 7.

10. On August 25, 2010 at 2:22 p.m., Mr. Mayes sent Attorney Ehinger an e-mail asking him for an update on the purported bankruptcy. A true and correct copy of that e-mail is attached to the Mayes Declaration as Exhibit "1". *See* Mayes Declaration, ¶ 8.

11. On October 11, 2010, Mr. Mayes again e-mailed Attorney Ehinger indicating that he was still not able to locate any bankruptcy filing by Mr. and Mrs. Diepholz on PACER. A true and correct copy of that e-mail is attached to the Mayes Declaration as Exhibit "2". *See* Mayes Declaration, ¶ 9.

12. Mr. Ehinger responded to that e-mail on October 11, 2011 at 1:54 p.m. indicating that he believed a bankruptcy had been filed but that he had not seen the paperwork. A true and correct copy of that e-mail is attached to the Mayes Declaration as Exhibit "2". *See* Mayes Declaration, ¶ 10.

13. On October 25, 2010 at 2:21 p.m., Mr. Mayes again e-mailed Attorney Ehinger inquiring as to whether the bankruptcy had been filed. A true and correct copy of that e-mail is attached to the Mayes Declaration as Exhibit "3". *See* Mayes Declaration, ¶ 11.

14. On October 27, 2010 at 3:56 p.m., Attorney Ehinger responded to that e-mail indicating again that he believed a bankruptcy had been filed but that he also was not able to locate the purported bankruptcy filing on PACER. Mr. Ehinger provided Mr. Mayes with contact information for Attorney Don Lawrence, the Diepholz' bankruptcy attorney. A true and correct copy of that e-mail is attached to the Mayes Declaration as Exhibit "3". *See* Mayes Declaration, ¶ 12.

15. On October 27, 2010 at 4:18 p.m., Mr. Mayes e-mailed Attorney Lawrence requesting a case number. A true and correct copy of that e-mail is attached to the Mayes Declaration as Exhibit "3". *See* Mayes Declaration, ¶ 13.

16. On October 27, 2010 at 5:37 p.m., Attorney Lawrence e-mailed Mr. Mayes attaching a Notice of Filing of their bankruptcy petition. In that e-mail, Attorney Lawrence admitted that Mr. Mayes was not able to locate the filing on PACER because Mr. and Mrs. Diepholzes' name was "inadvertently misspelled initially." He further indicated that, according to his records, both Mr. Zahlmann and Mr. Mayes were sent notice of the filing but "there are times

when notice doesn't actually get to the creditors." A true and correct copy of that e-mail is attached to the Mayes Declaration as Exhibit "3". *See* Mayes Declaration, ¶ 14.

17. Mr. Mayes promptly informed Mr. Zahlmann of the bankruptcy filing and Mr. Zahlmann diligently acted to retain counsel, Attorney LaShawn Jenkins to contest the Diepholzes' discharge despite the fact that the deadline for filing a complaint objecting to the discharge of a debt had already passed. *See* Mayes Declaration, ¶ 15.

18. Despite Mr. Mayes due diligence, Mr. Lawrence's October 27, 2010 e-mail to him was the first notice he or Plaintiffs received confirming that an actual bankruptcy had been filed and identifying a case number for that bankruptcy. *See* Mayes Declaration, ¶ 16; Zahlmann Declaration, ¶ 7.

19. Plaintiffs or Mr. Mayes never received notice of the bankruptcy filing from the Court or otherwise prior to Attorney Lawrence's October 27, 2010 e-mail. *See* Mayes Declaration, ¶ 17; Zahlmann Declaration, ¶ 7.

20. Had Attorney Lawrence properly spelled Mr. and Mrs. Diepholz' name in the filings, Mr. Mayes would have located the bankruptcy as early as August 22, 2010 based on his PACER search and advised Mr. Zahlmann of the same. *See* Mayes Declaration, ¶ 18.

21. From July 14, 2010, to October 27, 2010, both Mr. Mayes and David Telles of MayesTelles PLLC personally checked, opened, scanned, and reviewed the mail each day. Prior to the e-mail from Mr. and Mrs. Diepholzes' bankruptcy counsel, Plaintiffs or their attorney never received any notice of the Diepholzes' bankruptcy filing in the U.S. Mail or otherwise. Had they received actual notice of the Diepholzes' bankruptcy filing, they most certainly would not have ignored such a notice. *See* Mayes Declaration, ¶ 19; Telles Declaration, ¶ 3; Zahlmann Declaration, ¶ 9.

22. Mr. Zahlmann could not have proceeded with an adversary action absent knowing that Mr. and Mrs. Diepholz had actually filed bankruptcy and having a case number for that filing. *See* Mayes Declaration, ¶ 20.

**Debtors' Repeated Misrepresentations to Plaintiffs and Courts Pre-Petition**

23. On August 29, 2003, Debtors knowingly and fraudulently presented payment to Plaintiff by a business check drawn on an account that belonged to Logo Lines Corporation, a company owned by Debtors that did not have sufficient funds to cover the check presented. Debtors presented this payment without having any intention of paying the Plaintiff. Plaintiff did not know the representations were false when made, detrimentally and reasonably relied upon fraudulent representations of the Debtors, and has been damaged by the Debtors false representations.

24. Following entry of the Judgment against Logo Lines, Plaintiffs engaged in discovery to collect upon the Judgment from Logo Lines, including a judgment debtor exam on August 9, 2006.

25. Defendant Brad Diepholz appeared with Attorney Ehinger at the judgment debtor exam of Logo Lines and represented to the Court that he was never a shareholder or owner of Logo Lines, that he was not its statutory agent and that he was only a former officer and employee of Logo Lines. A copy of the Minute Entry from the judgment debtor exam is attached to the Adversary Complaint as **Exhibit 2**.

26. This representation was confirmed by Mr. Ehinger in a letter dated August 9, 2006, a copy of which is attached to the Adversary Complaint as **Exhibit 3**.

27. Despite this representation to the Court, which was also confirmed in Mr. Ehinger's August 9, 2006 letter, Brad Diepholz made contrary sworn statements in the annual reports of Logo Lines filed with the Arizona Corporation Commission where he represented he was the sole shareholder and owner of Logo Lines. Copies of 2003, 2004 and 2005 annual reports of Logo Lines attached to the Adversary Complaint as **Exhibit 4**.

28. Additionally, Mr. Ehinger's e-mail correspondence of September 25, 2008 also contradicts these statements as evidenced by his categorization of the payment of the personal

debts of the Debtors by Logo Lines as legitimate compensation to shareholders. A copy of the September 25, 2008 e-mail correspondence from Mr. Ehinger is attached to the Adversary Complaint as **Exhibit 5**.

29. During additional discovery, Plaintiffs also obtained various documents of Logo Lines, the Debtors, B&K Properties, and Palo Verde Embroidery, Inc. ("**Palo Verde**"), which Plaintiffs had examined by a certified public accountant.

30. As a result of the examination of the various documents, the certified public accountant reached conclusions and opinions regarding the operation of Logo Lines and its interactions with the Debtors, B&K and Palo Verde including, but not limited to:

   a. Logo Lines was never adequately capitalized;
   b. Brad Diepholz was the president of Logo Lines and exercised all control and Management of Logo Lines' activities;
   c. Logo Lines and the Debtors consistently commingled business and personal debts without formalizing a majority of the transactions and failed to follow the form of the few existing documents memorializing the transactions;
   d. Logo Lines, B&K and Palo Verde consistently commingled funds, debts and assets without formalizing a majority of the transactions and failed to follow the form of the few existing documents memorializing the transactions;
   e. The assets of Logo Lines inexplicably disappeared including, but not limited to, a vehicle, accounts receivable and office furnishings; and
   f. Logo Lines failed to follow corporate formalities.

31. The actions of the Debtors and Logo Lines are so intermixed that they demonstrate a unity of interest where the separateness of the individual and corporation cease to exist.

32. As of February 7, 2011, Plaintiff's claim arising from the Judgment totaled at least $55,000.00.

## III. LEGAL ARGUMENT.

A complaint should not be dismissed for failure to state a claim on which relief can be granted unless plaintiffs cannot prove any set of facts in support of their claim that would entitle them to relief. *See Parks School of Business, Inc. v. Symington*, 51 F.3d 1480 (9th Cir. 1995). Public policy favors disposition of cases on their merits. *See, e.g., Hernandez v. City of El Monte*, 138 F.3d 393, 398 (9th Cir. 1998).

### A. The Motion Should Be Denied Because Plaintiffs Never Received Actual Notice of the Bankruptcy Until After The Deadline Set Forth In Rule 4007(c) To File A Complaint For Determination of Dischargeability Of Debt.

"Even if notice to a creditor's state court lawyer is sufficient, it remains necessary to determine whether such notice was actually given." *See In re Todd Williams*, 2011 WL 309148, at *2 (Bankr. D. Ariz. Jan. 28, 2011). The presumption of receipt created by the mailbox rule can be rebutted by specific evidence of non-receipt (such as standard mail handling procedures and lack of incentive for delay). *See In re Todd Williams*, 2011 WL 309148, at *4 (Bankr. D. Ariz. Jan. 28, 2011).

In our case, the Zahlmann Declaration, the Mayes Declaration, and the Telles Declaration demonstrate that Plaintiffs and their state court counsel never received notice of the bankruptcy filing by the Debtors despite their due diligence. The Zahlmann Declaration establishes that Debtors had notice of his new address since August 20, 2010, but failed to take any action to amend their creditor mailing list to ensure notices were sent to Zahlmann's new address. The Mayes Declaration and Telles Declaration highlights the standard mail handling procedures utilized by his office and that no one in his office received any notices in the mail regarding the Debtors' bankruptcy case. The Mayes Declaration further brings to light a number of irregularities including but not limited to the fact that

the Diepholzes' name was misspelled in their bankruptcy filings resulting in the inability to locate the case on PACER. This fact is also admitted by Debtors' bankruptcy counsel in the Motion and in his October 27, 2010 email to Mr. Mayes.[1]

The facts also demonstrate that Plaintiffs have attempted to collect their debt against the Debtors for over 6 years, spent thousands of dollars pursuing the debtors, and were in the midst of diligently pursuing the Diepholzes in the State Court Action when they discovered the bankruptcy. Plaintiffs would have derived no benefit from ignoring a notice received concerning the Debtors' bankruptcy considering their efforts to collect the Judgment against the Debtors.

Moreover, Plaintiffs and Mr. Mayes were diligent in repeatedly inquiring whether there was a bankruptcy action pending in regard to the Diepholzes. Notwithstanding their diligence, and by no fault of their own, they did not receive notice until October 27, 2010, well after the time had expired to file a non-dischargeability action. Plaintiffs should not be penalized for not having received notice despite their obvious diligence in pursuing their claims.

### B. The Motion Should Be Denied Because Any Failure To Receive Notice Was Due To Debtors' and Their Attorneys' Negligence.

As the Ninth Circuit explained in *In re Dewalt*, ". . . holding a creditor to the highest standards of diligence in a situation caused by the negligence of a debtor, and rewarding the debtor, in effect, for negligent filing [unfairly punishes creditors]." *See In re Dewalt*, 961 F.2d. at 850. The creditor in *In re Dewalt* received notice of the debtor's bankruptcy 7 days prior to the expiration of deadline to file dischargeability complaint due to the debtor's failure to properly list the creditor's correct address in its case twice. *See In re Dewalt*, 961 F.2d. at 849-851. The Court held that a creditor that does not receive notice of a bankruptcy at least 30 days in advance of the deadline to file

---

[1] In fact, to this day, the Debtors still have not taken the necessary steps to ensure that the Clerk corrects the

a dischargeability complaint has sufficient grounds to file a dischargeability complaint pursuant to §523(a)(3)(B). *Id*. at 851.

The facts of our case demonstrate that any failure to receive actual notice of the Debtors' bankruptcy case was due to the following negligence acts of the Debtors and their attorneys: (i) failing to alert the Clerk of the Court that the Debtors' name appeared misspelled on the PACER docket so that the Debtors' case could be found by Plaintiffs' state court attorney, (ii) failing to take any action to amend the schedules and creditor mailing list upon learning of Plaintiffs' new address on August 31, 2010,[2] (iii) Debtors' state court attorney, Attorney Ehinger, negligently (or perhaps intentionally) misrepresenting that he would keep Plaintiffs' attorney updated on whether the Diepholzes filed bankruptcy, (iv) failing to provide confirmation and notice to Plaintiffs and Mr. Mayes of the Debtors' bankruptcy filing until October 27, 2010, despite repeated requests by Plaintiffs' attorney for confirmation, and (v) failing to file a Notice of Filing Bankruptcy until November 9, 2010, which was 22 days after the deadline for filing dischargeability complaints had passed.

In light of these facts and circumstances, the preponderance of the evidence suggests that Plaintiffs or their attorney did not receive notice, through no fault of their own, but due to the negligence or intentional acts of the Debtors and Debtors' counsel.

---

Debtors' name on PACER so that the public can find information on the Diepholzes' bankruptcy filing.

2 Debtors argue that notice to a state court attorney for the creditor constitutes actual notice to a creditor of a bankruptcy proceeding. *See In re Price*, 871 F.2d 97, 99 (9th Cir. 1989). Surely notice by Mr. Zahlmann of Plaintiffs' change of address to the Debtors' state court counsel likewise apprised Debtors of the new address of Plaintiffs and created a duty on the part of Debtors to amend the creditor mailing list accordingly. Despite this knowledge, the Debtors and their counsel took no action to amend the creditor mailing list they submitted on August 12, 2010.

### C. The Motion Should Be Denied Because A Complaint To Determine Dischargeability Pursuant To Section 523(a)(3)(B) Can Be Filed At Any Time.

It is well established that a complaint to determine dischargeability pursuant to Section 523(a)(3)(B) is governed by FRBP Rule 4007(b), not Rule 4007(c), and can be filed at any time. *In re Staffer*, 262 B.R. 80 (B.A.P. 9th Cir. 2001). In fact, in *In re McGhan*, 288 F.3d 1172 (9th Cir. 2002), the creditor waited five years for a change in the law to occur before filing its non-dischargeability complaint pursuant to Section 523(a)(3), and the Court found that the creditor did not unreasonably delay or act with insufficient diligence. *See id*. Defendants fail to cite any authority establishing a time limit on a creditors ability to commence an adversary proceeding pursuant to Section 523(a)(3)(B). Instead, Debtors entirely misstate the holdings and/or erroneously rely on dicta of three cases to argue that a creditor that receives notice of a bankruptcy proceeding after the expiration of the deadline to file a dischargeability complaint must file its complaint within 80 days. However, none of the cases cited by Debtors support such an argument.

In *In re Alton*, the creditor admitted receiving actual notice of the bankruptcy 77 days prior to the deadline for filing a dischargeability complaint. Therefore, the Eleventh Circuit found that he "received actual notice of the bankruptcy proceeding with sufficient time to allow him to file a timely dischargeability complaint", and upheld the district court's decision that a creditor must file a request for an extension of time under FRBP 4007(c) before the time period for filing a dischargeability complaint has run. *See In re Alton*, 837 F.2d 457, 459 (11th Cir. 1988). Unlike the creditor in *In re Alton*, Plaintiffs did not receive notice prior to the expiration of the deadline to file a dischargeability complaint, but 9 days after the deadline.

In *In re Price*, 62 days prior to the deadline for filing a dischargeability complaint, the creditor received a Notice of Injunction filed in the state court action which stated that a bankruptcy petition had been filed and that the lawsuit was subject to the automatic stay. *See In re Price*, 871 F.2d 97, 99 (9th Cir. 1989). The creditor took no action prior to the expiration of the deadline to file a dischargeability complaint, but instead waited a month after the deadline passed to file a Motion for Leave to File Late Complaint and claimed excusable neglect. *See In re Price*, 871 F.2d at 98. The Ninth Circuit held that the creditor was given reasonable notice of the bankruptcy and had sufficient opportunity to either file a dishargeability complaint or a motion for an extension before the time expired. *See In re Price*, 871 F.2d 97, 99 (9th Cir. 1989). In *In re Price*, the Ninth Circuit found it determinative that the same attorney that represented the creditor in the state court action was the same attorney that represented the creditor in the bankruptcy proceeding. *See id*. Unlike the creditor in *In re Price*, Plaintiffs did not receive notice prior to the expiration of the deadline to file a dischargeability complaint, and had to find different counsel to represent them in the bankruptcy.

The facts of the *In re Dewalt* case are most factually analogous to our case, but counsel for the Debtors has misstated the holding and/or misinterpreted the dicta in the case. In *In re Dewalt*, the creditor received notice of the bankruptcy filing only 7 days before the bar date, did not file a motion for extension of time before the bar date, and filed its §523(a)(3)(B) dischargeability complaint 147 days after receiving actual notice of the bankruptcy proceedings. *See In re Dewalt*, 961 F.2d 848, 851 (9th Cir. 1992). The debtor filed a motion to dismiss the complaint as untimely. *Id*. at 850.[3] The Ninth Circuit denied the motion to dismiss and held that

---

[3] Despite knowing the creditor's address, the Debtor incorrectly listed the creditor's address on its initial

a creditor must be given advance knowledge of the case at least 30 days prior to the expiration of the dischargeability deadline in order to bar the creditor's dischargeability complaint as untimely. *See In re Dewalt*, 961 F.2d 848, 851 (9th Cir. 1992).

In our case, Plaintiffs did not receive notice of the Debtors' bankruptcy filing until 9 days after the deadline to file a dischargeability complaint, and filed their Adversary Complaint 103 days after receiving notice. Therefore, even assuming there was some time limit on the ability of a creditor to file a §523(a)(3)(B) complaint (and there is not), *In re Dewalt* establishes that a dischargeability complaint filed within 147 days should not be dismissed as untimely.

In conclusion, none of the cases cited by the Debtors hold that a creditor that receives notice of a bankruptcy proceeding after the dischargeability deadline must file a dischargeability complaint within 80 days. Pursuant to FRBP 4007(b) and well established Ninth Circuit law, there is no deadline to file a complaint under §523(a)(3)(B). Therefore, Plaintiffs have adequate grounds to proceed with their complaint under Section 523(a)(3)(B), and their complaint should not be dismissed as untimely.

### D. Equity Justifies A Denial Of The Motion, And Allowing Plaintiffs Complaint To Be Heard On Its Merits.

Bankruptcy Code §105(a) reads:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the pro visions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

---

Notice of Intent, and again listed the creditor's address incorrectly on a subsequent amendment to its schedules. *Id*. at 849-850. As a result, the creditor received no initial notice setting forth the date of the 341 meeting of creditors or the bar date for filing a dischargeability complaint, or notice of the amendment to schedules. *Id*.

11 U.S.C. §105(a). *See also SEC v. United States Realty & Improvement Co.*, 310 U.S. 434, 455 (1940) ("A bankruptcy court is a court of equity and is guided by equitable doctrines and principles except in so far as they are inconsistent with the Act." (citations omitted)).

Plaintiffs have set forth sufficient legal grounds for the denial of the Motion. Also, the facts and circumstances of this case provide the Court with adequate equitable grounds to deny the Motion and allow Plaintiffs to adjudicate the merits of their claims. The facts of this case demonstrate that Plaintiffs and their state court counsel, through no fault of their own, did not receive notice of the Debtors' bankruptcy filing until October 27, 2010, despite their due diligence. Plaintiffs have attempted to collect their debt against the assets of the Debtors for over 6 years, spent thousands of dollars pursuing the debtors, and were in the midst of diligently pursuing the Diepholzes in the State Court Action when they discovered the bankruptcy. If the Debtors are allowed to get away with not giving Plaintiffs or Plaintiffs' attorney actual notice of their bankruptcy, a grave injustice will occur to Plaintiffs as their rights are severely prejudiced because they can no longer collect on our Judgment, through no fault of their own.

## IV. CONCLUSION.

Based on the foregoing, Plaintiffs respectfully requests the Court enter an Order:

A. Denying the Motion; and

B. Requiring Debtors to pay Plaintiffs their reasonable attorneys' fees and costs incurred in connection with opposing this Motion, subject to a further filing of an application for attorneys' fees and costs and Court approval; and

C. Granting such other and further relief as the Court deems just and proper.

DATED this 28th day of March, 2011.

JENKINS LAW FIRM

By /s/ LaShawn D. Jenkins
LaShawn D. Jenkins

Attorneys for Walter Zahlmann and Twin Enterprises Consulting

**ORIGINAL** of the foregoing filed via ECF this 28th day of March, 2011.

**COPY** of the foregoing emailed this 28th day of March, 2011 to:

Don J. Lawrence
LAWRENCE LAW OFFICES, PLLC
8110 East Cactus Road., Ste. 105
Scottsdale, AZ 85260-5210
Teamlaw_don@cox.net

Michael P. Lane – 007435
LANE & NACH, P.C.
2025 North Third Street, Suite 157
Phoenix, Arizona 85004
michael.lane@lane-nach.com

Attorney for Chapter 7 Trustee, Roger Brown

Office of the U.S. Trustee
230 North First Avenue, Suite 204
Phoenix, AZ 85003-1706
USTPRegion14.PX.ECF@USDOJ.GOV

/s/ LaShawn D. Jenkins